No. 2--07--0151          Filed: 12-21-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CHRIS STEMPLE and DONNA STEMPLE, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 05--AR--3083 |
| | ) | |
| CHARLES K. PICKERILL and CHARLES | ) | |
| L. PICKERILL, d/b/a Charley's Auto | ) | |
| Service, | ) | Honorable |
| | ) | Kenneth A. Abraham, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

This case involves the aftermath of a mandatory arbitration decision in favor of the plaintiffs. The defendants filed a rejection of the arbitration award, but several months later changed their minds and sought to withdraw their rejection. The trial court allowed the withdrawal and barred the plaintiffs from filing their own rejection of the arbitration award. The plaintiffs appealed. We reverse and remand.

On August 26, 2005, the plaintiffs, Chris and Donna Stemple, filed a complaint against the defendants, Charles K. Pickerill and Charles L. Pickerill, doing business as Charley's Auto Service, alleging that the defendants had sold them an engine that failed to operate despite the defendants' warranties and representations that it would operate. The complaint sought $25,000 in damages and contained four claims: breach of express warranty (count I), breach of implied warranties (count II),

violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq. (West 2004)) (count III), and common-law fraud (count IV). At the same time, the plaintiffs filed a jury demand and a disclosure pursuant to Supreme Court Rule 222 (210 Ill. 2d R. 222). Rule 222 requires the parties to disclose, no later than 120 days after the complaint or responsive pleading is filed, the factual basis and legal theory of the claim or defense and the witnesses and tangible evidence supporting the claim or defense. Rule 222(g) mandates that the trial court exclude at trial any party's evidence that was not timely disclosed pursuant to that rule, unless the party receives leave of court for good cause shown. 210 Ill. 2d R. 222(g). The defendants answered the complaint, denying the claims. The defendants did not file or serve a Rule 222 disclosure of their own.

In January 2006, the case was set for mandatory arbitration approximately three months later. On March 22, 2006, the plaintiffs filed a notice pursuant to Supreme Court Rule 90 (210 Ill. 2d R. 90), attaching the documents they planned to introduce as evidence at the arbitration. The defendants did not file a Rule 90 notice. The arbitration took place on April 20, 2006. The same day, the arbitrators found in favor of the plaintiffs on count I of the complaint and entered an award totaling $8,149.50, which included damages, attorney fees, and costs. The arbitrators found in favor of the defendants on counts II, III, and IV. The defendants filed a rejection of the arbitration award on May 11, 2006.

On June 7, 2006, the plaintiffs filed a motion to bar the defendants from presenting any witnesses, evidence, or defense at trial, based on the defendants' failure to file a Rule 222 disclosure. The motion noted that the defendants had not filed a Rule 90 notice either. On June 19, 2006, the defendants filed a response to the plaintiffs' motion, asserting that they had "communicated" to the plaintiffs that they did not intend to introduce or use at trial any documents other than those already

identified by the plaintiffs. At the same time, the defendants filed a motion to strike and dismiss counts III and IV of the complaint for failure to plead fraud with sufficient specificity, and a "Notice Pursuant to Supreme Court Rule 90 (and as further Ordered by the Court post-Arbitration Hearing)," in which they identified the witnesses whom they intended to call at trial.

The trial court held a pretrial conference with the parties on August 17, 2006. According to a bystander's report included in the record on appeal, the conference occurred in the trial judge's chambers and proceeded as follows:

"[The trial court] inquired as to who had rejected the Arbitration Award. When the lawyers told [the court] that the Defendants had rejected, [the court] stated that this rejection was ill-advised, and that the Defendants were likely to have a judgment entered against them, at trial, substantially larger than the Arbitration Award against Defendants."

The trial court then asked the plaintiffs' attorney if the plaintiffs would accept a settlement offer in the amount of the arbitration award, in the event that the defendants offered that amount. The plaintiffs' attorney conferred with his clients and told the court that the plaintiffs would not accept such an offer, as the plaintiffs had sustained additional damages, costs, and expenses since the time of the arbitration.

The trial court then told the defendants' attorney that the defendants could move to withdraw their rejection of the arbitration award, and that if they did so the trial court would enter a judgment based on the arbitration award. The plaintiffs' attorney objected, arguing that there was no legal basis either for vacating the rejection of the arbitration award or for permitting the defendants to move to withdraw it. The plaintiffs' attorney stated that if the trial court granted a motion to withdraw the rejection of the arbitration award, the plaintiffs then would wish to file a rejection of the arbitration

award, and he argued that the plaintiffs were entitled to a jury trial under the circumstances of the case. According to the defendants, at this point, the trial court stated its understanding that the plaintiffs could not file their own rejection of the arbitration award. The trial court then advised the defendants to file a motion to withdraw their rejection of the award, set a 14-day deadline for filing such a motion, and set a briefing schedule culminating in a hearing date for the motion.

The defendants' motion to withdraw their rejection of the arbitration award was filed late, and the plaintiffs objected to the motion on that basis as well as on the merits, arguing that there was no legal basis on which to permit the withdrawal of the rejection and that doing so would be unfair to them. After requiring the defendants to file another motion seeking the court's permission for the late filing of their motion to withdraw the rejection, the trial court granted both of the defendants' motions. The plaintiffs appealed, raising essentially the same arguments as below.

We hold that the trial court erred in permitting the defendants to withdraw their earlier rejection of the arbitration award. To show why, we examine the purpose and history of the mandatory arbitration program. The mandatory arbitration system was authorized by the legislature in 1986 (see Ill. Rev. Stat. 1987, ch. 110, par. 2--1001A) and established the following year via the adoption of Supreme Court Rules 86 through 95. The program was modeled on mandatory arbitration programs used in other states. See 134 Ill. 2d R. 86, Introductory Comments. According to the comments of the Rules Committee, the purpose of mandatory arbitration is to provide a "vehicle for an early, economical and fair resolution of monetary disputes." 134 Ill. 2d R. 86, Introductory Comments, at 87; see also Akpan v. Sharma, 293 Ill. App. 3d 100, 102 (1997). Any Illinois judicial circuit wishing to establish a mandatory arbitration program must first receive approval from the supreme court. 155 Ill. 2d R. 86(a). Circuits may establish local rules for their

mandatory arbitration programs, but those rules must be consistent with the supreme court rules governing arbitration. 155 Ill. 2d R. 86(c).

In order to protect the constitutional right to a trial by jury, Rule 93 grants litigants who have been ordered to arbitration the right to reject the arbitrators' award. Gershak v. Feign, 317 Ill. App. 3d 14, 25 (2000). Thus, no party that has participated in good faith in the arbitration can be forced to accept an arbitration award. Cf. 145 Ill. 2d R. 91 (permitting a trial court to debar a party from rejecting an arbitration award where the party did not attend or participate in the arbitration in good faith). A party wishing to reject an arbitration award must meet certain requirements, however. Pursuant to Rule 93(a), any party wishing to reject an arbitration award must file a notice of rejection within 30 days, and must pay a fee unless the fee is waived by the court on the basis of indigence. 166 Ill. 2d Rs. 93(a), (c). If one party files a notice of rejection, any other party wishing to reject the award may rely on that notice and need not file his or her own notice of rejection. 166 Ill. 2d R. 93(a).

As we note, no party participating in good faith may be forced to accept an arbitration award. The trial court's actions here--denying the plaintiffs the opportunity to file their own rejection of the award while permitting the defendants to withdraw their earlier rejection of the arbitration award--had the effect of forcing the plaintiffs to accept the arbitration award and were improper on that basis alone. 166 Ill. 2d R. 93(a); Gershak, 317 Ill. App. 3d at 25. We also believe that the trial judge came perilously close to acting as an advocate rather than a judge when he advised the defendants regarding their legal strategy and the potential to withdraw their rejection of the award. People v. Kuntz, 239 Ill. App. 3d 587, 592 (1993) (trial judge must never depart from the function of serving as an impartial judge and assume the role of an advocate). The trial court's error here was based on an even

more fundamental error, however: the trial court lacked any authority under the supreme court rules to grant the defendants' motion to withdraw their rejection of the arbitration award.

Supreme court rules are construed using the same principles that guide our construction of statutes. People v. Campbell, 224 Ill. 2d 80, 84 (2006). Our primary goal is to give effect to the intent of the rules' drafters. If the language of a rule is clear and unambiguous, courts will apply that language as it is written, without resorting to any further aids of construction. Campbell, 224 Ill. 2d at 84. We review the interpretation of supreme court rules, like the construction of statutes, de novo. Campbell, 224 Ill. 2d at 84.

We begin with the plain language of the supreme court rules governing mandatory arbitration. Although Rule 93 establishes a method by which a party may reject an arbitration award, there is no provision authorizing a party to later "withdraw" that rejection. Illinois courts have expressed their disapproval of judicial tinkering with the mandatory arbitration process as established through these rules. Rule 93 sets 30 days as the time in which a party must decide whether to accept or reject an arbitration award. A party cannot let this time expire and then later change his or her mind and reject the award. See, e.g., Thomas v. Leyva, 276 Ill. App. 3d 652, 655 (1995) ("it would be unreasonable to compel plaintiffs to proceed to trial on the merits merely because [the defendant] realized, months later, that the results of the [arbitration] judgment were not to her liking"). By the same token, there is no rule allowing a party to later change his or her mind about having rejected the award and "withdraw" the rejection. Thus, we can find no support in the supreme court rules for permitting a "withdrawal" of a previous rejection of an arbitration award.

Nor is there any provision permitting courts to modify the mandatory arbitration procedures as they see fit. If we were to condone a party's "withdrawal" of an earlier rejection of an arbitration

award, we would be required to articulate guidelines about the circumstances in which such a withdrawal may properly be granted. This court is not the Supreme Court Rules Committee. We decline to amend the rules by establishing new rules or procedures authorizing the withdrawal of a rejection of an arbitration award.

As we commented on an earlier occasion, courts have a limited role following the issuance of an arbitration award:

"[T]here is but one procedure for challenging an award entered in a mandatory arbitration proceeding: a party must file a timely notice of rejection of the award and request a trial. *** The role of the circuit court in such a proceeding is limited, and once the arbitration panel has made its award, the award is deemed an all-or-nothing proposition and the parties must accept or reject the award in its entirety." Magee v. Garreau, 332 Ill. App. 3d 1070, 1074-75 (2002).

In Magee, we held that when the arbitration award was not timely rejected, the trial court could not enter a settlement and "had no choice but to enter judgment on the award." Magee, 332 Ill. App. 3d at 1075. Other districts of the appellate court have also rejected trial courts' attempts to graft novel procedures onto the mandatory arbitration rules. In Akpan, 293 Ill. App. 3d at 104, and Guider v. McIntosh, 293 Ill. App. 3d 935, 938 (1997), the First District reversed trial court orders that granted second arbitrations after the first arbitration awards had been attacked. The First District condemned the grant of a second arbitration hearing as being outside the supreme court rules relating to mandatory arbitration and therefore unauthorized. See Guider, 293 Ill. App. 3d at 939 ("the trial court *** had no authority to order a second arbitration hearing"); Akpan, 293 Ill. App. 3d at 104 ("[t]he second hearing should not have taken place; the award issued at the end of that hearing was

unauthorized, was in error, is not binding on [the other party], and is reversed"). In <u>George v. Ospalik</u>, 299 Ill. App. 3d 888, 891 (1998), the Third District reacted similarly when the trial court <u>sua</u> <u>sponte</u> entered judgment on an arbitration award:

> "We agree with <u>Lollis</u> [<u>v. Chicago Transit Authority</u>, 238 Ill. App. 3d 583, 585 (1992),] that Supreme Court Rule 92(c) places the obligation on the parties to bring a motion to enter judgment on the award. Rule 92(c) has no provision that allows the trial court to enter a judgment on its own motion."

In all of these cases, appellate courts rejected procedures that were not expressly authorized by the supreme court rules on mandatory arbitration. The same principle applies in this case. The mandatory arbitration rules do not authorize a trial court to entertain a motion for the withdrawal of a rejection of an arbitration award. Accordingly, such a withdrawal is impermissible.

Nor does permitting the withdrawal of a rejection necessarily serve the purpose of the mandatory arbitration program, achieving an expeditious resolution of the dispute. A party who later realizes that rejecting the arbitration award was a mistake has a well-established route open to avoid the delay and expense of proceeding to trial: a settlement offer. The statistics on the number of cases that are settled versus those that proceed to trial demonstrate that, quite often, both sides of a dispute are amenable to settlement short of trial. There may be times, as in this case, where the other party does not wish to settle for the amount of the arbitration award, but this merely requires the first party to negotiate further to reach a mutually acceptable resolution. Once a party has properly rejected an arbitration award, a trial court may not unilaterally impose that award as the outcome of the case.

There are cases in which courts have not adhered to the strict language of Rule 93, but only when some other supreme court rule demanded it. For instance, in <u>Hornburg v. Esparza</u>, 316 Ill.

App. 3d 801, 805 (2000), the court held that Rule 93(a), which requires the filing of a certificate of service of the notice of rejection, must be harmonized with Rule 104, which provides that jurisdiction is not impaired if a party fails to deliver or serve copies as required by Rule 93(a). Thus, a party's failure to file a certificate of service with the rejection did not warrant striking the rejection. Hornburg, 316 Ill. App. 3d at 805. Similarly, this court recently held that, pursuant to Rule 183, a trial court could extend the time for filing a rejection of an arbitration award under Rule 93(a) "for good cause" shown. Gellert v. Jackson, 373 Ill. App. 3d 149, 151 (2007). In Gellert, the plaintiff attempted to file an arbitration award rejection at 4:40 p.m. on the last day of the 30-day window, but the clerk's office had closed at 4:30 despite a circuit court rule requiring clerks' offices to be open until 5 p.m., suggesting that the failure to meet the deadline was not the plaintiff's fault. Cf. Ianotti v. Chicago Park District, 250 Ill. App. 3d 628, 631 (1993) ("inadvertent error" is not "good cause" under Rule 183 sufficient to justify an extension of the time to file a rejection). In Hornburg and Gellert, another supreme court rule commanded relaxation of the strict requirements of the mandatory arbitration rules.

Where no other supreme court rule requires a more lenient approach, we have not hesitated to enforce the mandatory arbitration rules strictly. In Liebovich Steel & Aluminum Co. v. Advance Iron Works, Inc., 353 Ill. App. 3d 311, 315 (2004), we held that a litigant's inadvertent payment of a $200 fee instead of the correct $500 fee rendered its rejection of the arbitration award ineffective. Although the litigant cited Hornburg to support its argument in favor of a lenient interpretation of Rule 93, we rejected that argument because it had not identified any other supreme court rule suggesting that payment of an improper fee would meet the plain requirements of Rule 93. In an earlier case, Killoren v. Racich, we adopted a similarly strict interpretation of the mandatory

arbitration rules. See <u>Killoren v. Racich</u>, 260 Ill. App. 3d 197, 198 (1994) (by failing to pay the fee within 30 days, defendant waived his right to reject the arbitration award, despite filing a timely notice of rejection). In this case, as in <u>Liebovich Steel</u>, the parties have not identified any other supreme court rule authorizing the novel relief sought (here, the withdrawal of an earlier rejection of an arbitration award). Thus, we have no occasion to go beyond a narrow reading of the mandatory arbitration rules, which do not permit such withdrawals.

The special concurrence suggests that we should interpret Rule 93(a) similarly to section 2--1105(a) of the Code of Civil Procedure (735 ILCS 5/2--1105(a) (West 2006)), which governs jury demands. Like Rule 93(a), section 2--1105(a) provides that parties wishing to preserve their rights to a jury trial may rely on the jury demand filed by another party, and need not file their own. Where section 2--1105(a) differs from Rule 93(a), however, is that section 2--1105(a) contains express language permitting a party to withdraw its jury demand later in the litigation, and providing that other parties wishing a jury trial may, at that point, file their own jury demands. 735 ILCS 5/2--1105(a) (West 2006). Rule 93(a) contains no similar provisions, and the supreme court rules provide no authority for reading such provisions into it. We therefore cannot agree that section 2--1105(a) provides a persuasive parallel here.

We note that permitting the withdrawal of a previous rejection of an arbitration award does not appear to be a common practice in Illinois trial courts. We have discovered only one reported case mentioning (but not discussing) such a withdrawal. See <u>Avery v. Sabbia</u>, 301 Ill. App. 3d 839, 842-43 (1998). In that case, it appears that the defendants did not object to the plaintiffs' motion to withdraw their rejection of the award, and thus the entry of judgment on the award was more in the nature of a settlement acceptable to both parties. As discussed above, a later settlement in the

amount of the arbitration award is perfectly appropriate when both parties eventually decide that they prefer not to proceed to trial. Avery does not contribute to our examination of the issue of withdrawals of rejections because it contains no analysis of that issue. We also note that none of the Illinois judicial circuits that have created mandatory arbitration programs have established any local rules addressing the issue, confirming that permitting withdrawals of rejections has no formal approval by any court, and that the informal practice of permitting withdrawal is not widespread. Of course, any local rules regarding mandatory arbitration must be consistent with the supreme court rules. 155 Ill. 2d R. 86(c). Those rules contain no provisions authorizing the withdrawal of a party's rejection of a mandatory arbitration award.

The Illinois mandatory arbitration program was based in part on similar programs in other states, and thus foreign law might offer guidance on the issue. Unfortunately, there is a dearth of relevant case law in other jurisdictions as well as in our own. However, one case from California, a state with a well-established arbitration program, offers a helpful analysis of the issue. In Marracino v. Brandstetter, 14 Cal. App. 4th 543, 17 Cal. Rptr. 2d 700 (1993), the lawsuit was assigned to arbitration and the arbitrators ruled in favor of the plaintiffs, awarding them $53,112.96 plus costs. Marracino, 14 Cal. App. 4th at 545, 17 Cal. Rptr. 2d at 701. The defendant, who was representing himself, filed a timely rejection of the award. (In California, such a rejection takes the form of a request for a trial de novo.) Marracino, 14 Cal. App. 4th at 545, 17 Cal. Rptr. 2d at 701. About six months later, the defendant retained counsel, who appeared for him and filed a "Withdrawal of Request for Trial de Novo and Stipulation to Judgment Based on Arbitrator's Award." Marracino, 14 Cal. App. 4th at 545, 17 Cal. Rptr. 2d at 701. The trial court held that it had no authority to grant a withdrawal of the request for a trial de novo. The case went to trial, and the plaintiffs were

awarded $327,433.83, including prejudgment interest, punitive damages, and court costs. Marracino, 14 Cal. App. 4th at 545, 17 Cal. Rptr. 2d at 701. The defendant appealed.

The appellate court affirmed the trial court's refusal to allow the defendant to withdraw his rejection of the arbitration award. Marracino, 14 Cal. App. 4th at 546-47, 17 Cal. Rptr. 2d at 702. It noted that the defendant had cited no law in support of his position that a withdrawal was permissible. Marracino, 14 Cal. App. 4th at 546, 17 Cal. Rptr. 2d at 702. The appellate court stated that "[n]othing in the statutory scheme governing judicial arbitration [citation] or in the Judicial Council rules grants the court the power to permit withdrawal of a request for trial de novo after the 30-day period has run." Marracino, 14 Cal. App. 4th at 546, 17 Cal. Rptr. 2d at 701. In addition, although local courts were permitted to enact rules relating to arbitration so long as the rules did not conflict with the statutes or Judicial Council rules, the local court had not enacted any rules that would permit "the unilateral withdrawal sought by defendant." Marracino, 14 Cal. App. 4th at 546, 17 Cal. Rptr. 2d at 702. Finally, the appellate court also based its holding on the fact that in California (as in Illinois) the parties have only 30 days to reject an arbitration award and, if one party does so, the other party does not need to also file a rejection. "[A]llowing the unilateral withdrawal of a request for trial de novo after the statutory period has run would, we believe, create an impermissible risk of denying those adverse parties who relied on the original request their right to trial following judicial arbitration." Marracino, 14 Cal. App. 4th at 547, 17 Cal. Rptr. 2d at 702. Because the plaintiffs were indisputably beyond the time in which they could file their own rejection, it would be unfair to allow the defendant to withdraw his previously-filed rejection.

All of the analysis in Marracino is equally applicable here. Nothing in the supreme court rules (or the local rules) authorizes the withdrawal of a previous rejection of an arbitration award, and

-12-

permitting such a withdrawal creates the risk of unfairly imposing the arbitration award on a party that would have rejected it. Moreover, courts are not free to create their own rules and procedures in an attempt to provide for such a withdrawal. For all of the foregoing reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

ZENOFF, J., concurs.

JUSTICE McLAREN, specially concurring:

The majority holding is as follows: "We hold that the trial court erred in permitting the defendants to withdraw their earlier rejection of the arbitration award." Slip op. at 4.

I believe that the holding should be: We hold that the trial court erred in permitting the defendants to withdraw their earlier rejection of the arbitration award without allowing the plaintiffs to reject the award.

I believe that the trial court had the inherent authority to allow a withdrawal of the rejection as an exercise of discretion. However, the trial court should then have allowed the plaintiffs to file a rejection within the time provided to reject the award (30 days), computed from the time of the entry of the order granting the withdrawal. I base this conclusion on the following quote taken from the majority:

"In order to protect the constitutional right to a trial by jury, Rule 93 grants litigants who have been ordered to arbitration the right to reject the arbitrators' award. Gershak v. Feign, 317 Ill. App. 3d 14, 25 (2000). Thus, no party that has participated in good faith in the arbitration can be forced to accept an arbitration award. Cf. 145 Ill. 2d R. 91 (permitting a trial court to debar a party from rejecting an arbitration award where the party did not

-13-

attend or participate in the arbitration in good faith). A party wishing to reject an arbitration award must meet certain requirements, however. Pursuant to Rule 93(a), any party wishing to reject an arbitration award must file a notice of rejection within 30 days, and must pay a fee unless the fee is waived by the court on the basis of indigence. 166 Ill. 2d Rs. 93(a), (c). If one party files a notice of rejection, any other party wishing to reject the award may rely on that notice and need not file his or her own notice of rejection. 166 Ill. 2d 93(a).

As we note, no party participating in good faith may be forced to accept an arbitration award. The trial court's actions here--denying the plaintiffs the opportunity to file their own rejection of the award while permitting the defendants to vacate their earlier rejection of the arbitration award--had the effect of forcing the plaintiffs to accept the arbitration award and were improper on that basis alone. 166 Ill. 2d R. 93(a); Gershak, 317 Ill. App. 3d at 25." Slip op. at 5.

The purpose of mandatory arbitration is to provide a "vehicle for an early, economical and fair resolution of monetary disputes." 134 Ill. 2d R. 86, Introductory Comments, at 87; see also Akpan v. Sharma, 293 Ill. App. 3d 100, 102 (1997). I fail to see how prohibiting a party from withdrawing a rejection fosters this policy. Under the majority's holding, a vehicle for an early, economical, and fair resolution of monetary disputes could be thwarted or hindered. Parties would be required to litigate a suit despite the fact that there was no objection to the withdrawal of the rejection. See Avery v. Sabbia, 301 Ill. App. 3d 839, 842-43 (1998).

There are other scenarios where the facts, circumstances, and equities of the case may entitle the movant to withdraw the rejection of the award. So long as the trial court allows any other party that did not reject the award the opportunity to reject the award, the rights of all parties will be

protected and there will be a vehicle for an early, economical, and fair resolution of monetary disputes.

The majority determines that there is no rule allowing for the withdrawal of a rejection. The majority concludes that the absence of a declaration of intent regarding withdrawal requires the conclusion that the legislature and the supreme court did not intend to allow the withdrawal of a rejection. I submit that the absence of any mention of withdrawal of a rejection is not a clear indication of an intent to prohibit such a withdrawal. I submit that the issue is not mentioned because no legislation or rule can cover all possible circumstances that could unfold during the process of resolving disputes. I submit that nothing suggests that the legislature and the supreme court concluded that rejections cannot be withdrawn under any circumstance, as the majority has held. Absence of evidence is not necessarily evidence of absence. People v. Mata, 353 Ill. App. 3d 784, 788 (2004). Simply put, the majority cannot cite to a section, sentence, or phrase that addresses the issue of withdrawal of a rejection.[1]

The purpose behind a rejection is to allow a party the right to a trial. Analogically, if a party files a jury demand and later determines that he desires to waive the right, he is allowed to do so, provided that other parties that did not file a demand are given the opportunity to do so. See 735 ILCS 5/2--1105 (West 2006). There is similar language in Rule 93(a): "The filing of a single rejection shall be sufficient to enable all parties *** to proceed to trial on all issues." 166 Ill. 2d R. 93(a). The majority states, "If one party files a notice of rejection, any other party wishing to reject the award

---

[1]The majority mentions that Rule 93(a) is designed to protect the right to a jury trial. Slip op. at 5. However, the term "jury" is not contained in the rule. It would seem the rule does require interpretation to include that which is not specified in the rule.

may rely on that notice and need not file his or her own notice of rejection." Slip op. at 5. I submit that the same logic applies with jury demands. If one party files a jury demand, any other party wishing to file a jury demand may rely on the filed demand and need not file his own. This parallel language is consistent with the belief that, if a jury demand is withdrawn, the other parties have a right to file a demand. Likewise, were a party allowed to withdraw its rejection of an arbitration award, the other parties should be given the option to file a rejection. This interpretation is implicit in Rule 93(a).

The majority cites to Avery, 301 Ill. App. 3d 839, and concludes that the trial court's allowance of a withdrawal of a rejection without objection from any party is more in the nature of a settlement acceptable to both parties. Regardless of its nature, it was not determined to be beyond the authority of the court.

The majority finds clarity in a vacuum and then determines that rejections cannot be withdrawn. The majority has also implicitly determined that the trial court does not have the authority to allow or disallow rejections for reasons that are not set forth in the rule. See Gershak v. Feign, 317 Ill. App. 3d 14, 19 (2000) (failure to comply with supreme court rule regarding signature by an attorney did not abrogate the rejection of the award, affirming the trial court's determination of validity of the rejection). The trial court should be allowed to resolve ambiguities by interpretation of intent rather than negative inference and presumption.

The majority's view of interpreting the rules as tinkering with them is problematic. Were we to conclude that a rule does not provide for an interpretation merely because an issue or term is not included in the rule, then we would not be determining the intent of the supreme court. On the contrary, we would be determining that anything that the court did not explicitly consider or address

is prohibited.  Sometimes, this fosters the purpose behind the rule. Sometimes, it does not.  In this case, it does not.  In any event, it does not correctly determine the intent of the enactors.